IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ZACKERY P.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 3:25-cv-01155-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Zackery P.[1] seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is REVERSED and REMANDED.

This appeal pertains to step five of the five-step sequential analysis used in determining whether an applicant is disabled within the meaning of the Social Security Act. At step five, "the ALJ considers the applicant's background and residual functional capacity, that is, what physical tasks the applicant can still perform despite [the applicant's] limitations, to decide if the applicant can make an adjustment to some other available job." *Gutierrez v. Colvin*, 844 F.3d 804, 806 (9th

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

Cir. 2016). Otherwise stated, the ALJ considers, "Is the claimant able to do any other work?" *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If not, the claimant is disabled. *Id.* "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that [the] claimant can do." *Id.*

"[T]he Commissioner bears the burden to prove that the claimant is able to perform alternative work." *Pearson v. Colvin*, 810 F.3d 204, 207 (9th Cir. 2015). "[T]he ALJ may rely on an impartial vocational expert to provide testimony about jobs the applicant can perform despite [the applicant's] limitations." *Gutierrez*, 844 F.3d at 806–07. "The *Dictionary of Occupational Titles* ('*Dictionary*'), a resource compiled by the Department of Labor that details the specific requirements for different occupations, guides the analysis." *Id.* The *Dictionary*, also called the DOT, refers to "occupations" and not to specific jobs. *Gutierrez*, 844 F.3d at 807. "Occupation is a broad term that includes the collective description of numerous jobs and lists maximum requirements of the jobs as generally performed." *Id.* (simplified) (citing SSR 00-4P, 2000 WL 1898704, at **2–3). The *Dictionary* "shows generally what is required of workers, 'not what individual workers are expected to perform on specific jobs.'" *Turner v. Chater*, 103 F.3d 145, at 1 (10th Cir. 1996); *see* SSR 00-4P, 2000 WL 1898704 at *3 ("The [*Dictionary*] lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings.").

"If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez*, 844 F.3d at 807 (citing SSR 00-4P, 2000 WL 1898704 at *2). "Because of th[e] definitional overlap" between the terms occupation and job, "not all potential conflicts between

an expert's job suitability recommendation and the *Dictionary's* listing of maximum requirements for an occupation will be apparent or obvious," and "an ALJ need only follow up on those that are." *Id.* (simplified). For a conflict to be obvious or apparent, the expert's "testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected." *Id.* "[T]asks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise, where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required." *Id.*

For example, in *Gutierrez*, the Ninth Circuit found there was "no apparent or obvious conflict between the expert's testimony that [the claimant] could perform as a cashier, despite her weight bearing and overhead reaching limitations with her right arm, and the *Dictionary's* general statement that cashiering requires frequent reaching." *Id.* The Ninth Circuit recognized that, "[w]hile 'reaching' connotes the ability to extend one's hands and arms 'in any direction,' SSR 85-15, 1985 WL 56857, at *7 (1985), not every job that involves reaching requires the ability to reach overhead," and "[c]ashiering is a good example." *Id.*

By contrast, in *Lamear v. Berryhill*, the Ninth Circuit could not conclude "based on common experience" that "it is likely and foreseeable that an office helper, mail clerk, or parking lot cashier with limitations on his ability to 'handle, finger and feel with the left hand' could perform his duties." 865 F.3d 1201, 1205 (9th Cir. 2017). The court noted "[t]he DOT's lengthy descriptions for these jobs strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." *Id.* The court observed that, "[a]ccording to the DOT, the general tasks for these jobs include opening and sorting mail, stuffing envelopes, distributing paperwork, and counting change," and that "all three jobs require workers to 'frequently' engage in handling,

fingering, and reaching, which means that these types of activities could be necessary for as much as two-thirds of the workday." *Id*. The court concluded that, "[a]bsent anything in the record to explain this apparent discrepancy, we must reverse and remand so the ALJ can ask the VE to reconcile these jobs with Lamear's left hand limitations." *Id.*

Here, the ALJ found that plaintiff suffers from major depressive disorder, among other severe impairments. Tr. 20. In March 2021, plaintiff amputated the tips of his left third and fourth fingers, and then the following day, he amputated his left index finger and additional portions of his third and fourth fingers with a hatchet. Tr. 23. These were acts of self-harm, not accidents. *Id.*

The ALJ concluded that plaintiff can "occasionally handle and finger with the left (non-dominant) upper extremity" and can "frequently handle and finger with the right (dominant) upper extremity." Tr. 21–22. At the hearing, the ALJ asked the vocational expert ("VE") a hypothetical question that included these limitations, and the VE responded with three occupations that could be performed: merchandise marker (DOT 209.587-034), routing clerk (DOT 222.687-022), and housekeeping cleaner (DOT 323.687-014).[2] Tr. 27.

All three occupations require frequent handling, according to the United States Department of Labor publication titled Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles: the occupations of "marker" (DOT 209.587-034) and "routing clerk" (DOT 222.687-022) require frequent handling and fingering, and the job of "cleaner, housekeeping" (DOT 323.687-014) requires frequent handling and occasional

[2] "Handling" is defined in the Programs Operations Manual System ("POMS") as "[s]eizing, holding, grasping, turning, or otherwise working with the hand or hands (fingering not involved)." POMS § DI 25001.001(B)(19). "Fingering" is defined as "[p]icking, pinching, or otherwise working with the fingers primarily (rather than with the whole hand or arm as in handling)." POMS § DI 25001.001(B)(17). According to the *Dictionary*, "occasionally" means the "activity or condition exists up to 1/3 of the time" and "frequently" means the activity or condition exists from 1/3 to 2/3 of the time. *Dictionary of Occupational Titles*, App. C, § IV(c).

fingering. SOC, §§ 05.09.03, 07.07.02, 05.12.18. In fact, the VE testified that these jobs would not be available if the hypothetical was changed to "bilateral occasional handling and fingering." Tr. 68.

Nevertheless, the ALJ found that plaintiff was able to perform these three occupations. Tr. 27. The ALJ also included the following explanation for the discrepancy between the information contained in the *Dictionary* and the VE's testimony:

> Although the vocational expert's testimony was in part inconsistent with the information contained in the Dictionary of Occupational Titles (DOT), there is a reasonable explanation for the discrepancy. The vocational expert stated that she supplemented the DOT based on data, observations and methods, and her over 35 years of professional training and experience.

Tr. 27.

Plaintiff argues that all three of the occupations "clearly involve the use of hands":

> A merchandise marker "[m]arks selling price *by hand* on boxes containing merchandise, or on price tickets" and "[t]ies, glues, sews, or staples price ticket to each article." DOT at 209.587-034. A routing clerk "Sorts bundles, boxes, or lots of articles for delivery[.]" DOT at 222.687-022. A housekeeping cleaner "[m]oves furniture, hangs drapes, and rolls carpets." DOT at 323.687-014.

Reply 3. The Commissioner contends that, unlike *Lamear*, the DOT descriptions for the three occupations do not "strongly suggest" that frequent bilateral handling and fingering is necessary to perform essential, integral, or expected job duties. Def. Br. 4.

In *Glenn v. Berryhill*, the court considered whether a conflict existed where the ALJ limited the plaintiff to frequent handling in the right upper extremity but found he could perform the job of hand packager, which required constant handling. No. CV 1:17-643-PMD-SVH, 2017 WL 5900969, at *10 (D.S.C. Nov. 15, 2017), *report and recommendation adopted,* No. CV 1:17-

643-PMD, 2017 WL 5889205 (D.S.C. Nov. 29, 2017). The court observed that in some cases, courts have held that "a restriction with respect to one extremity does not conflict with the DOT." *Id.* (collecting cases). However, "[i]n those cases, the courts determined that the ALJs relied on the VEs' testimony after receiving explanations that resolved the apparent conflict between the RFC's restrictions and the *DOT*'s job descriptions"—"the VE had explained that the plaintiff could compensate for deficits in the use of one hand by using the other hand."[3] *Id.* The court held that, "[h]ere, however, there was no such explanation." *Id.* "In the instant case, the ALJ did not rely on an explanation from the VE that resolved the conflict because the VE did not provide one." *Id.*; *see also I.R. v. Saul*, 3:19-cv-05934-JCS, 2021 WL 1056633, at *10 (N.D. Cal. March 19, 2021) (finding there was an apparent conflict between the VE's opinion and the DOT where the VE opined that an individual limited to occasionally handling and fingering with the non-dominant hand and frequently handling and fingering with the dominant hand can perform the occupations of fast food worker, hand packager, machine packager, and home attendant).

Here, as in *Glenn*, the VE did not explain how plaintiff could compensate for deficits in the use of one hand by using the other hand when performing these three occupations, which all require frequent handling. Also, like *Lamear*, the "DOT's lengthy descriptions for these jobs strongly suggest that it is likely and foreseeable that using both hands would be necessary to perform 'essential, integral, or expected' tasks in an acceptable and efficient manner." 865 F.3d at 1205. According to the DOT, the general tasks for a housekeeping cleaner include cleaning

---

[3] *See*, *e.g.*, *Morris v. Astrue*, No. EDCV 12-1381 JC, 2013 WL 210197, at *4 (C.D. Cal. Jan. 17, 2013) (finding the jobs, which all required frequent handling, could be performed by the plaintiff who had no limitations in her right (dominant) hand, and "[t]he vocational expert confirmed as much when she testified that such jobs could be performed consistent with DOT requirements despite plaintiff's left hand limitations"); *Mitton v. Comm'r Soc. Sec.*, 670 F. App'x 754, 756 (3d Cir. 2016) (observing "the vocational expert stated that Mitton could work as a mail clerk, or as an inspector and hand packager, by using his unaffected hand more frequently").

rooms in commercial establishments, like hotels and restaurants, and performing duties such as sorting and folding linens, making beds, moving furniture, hanging drapes, and rolling carpet. DOT 323.687-014. The tasks for marker include marking and attaching price tickets to articles of merchandise, marking price by hand on boxes and price tickets, tying, gluing, sewing, or stapling price tickets to articles, and recording the number of articles marked and packing them in boxes. DOT 209.587-034. The tasks for routing clerk include sorting bundles, boxes, or lots of articles for delivery, and placing or stacking articles in bins. DOT 222.687-022.

Common experience dictates that folding sheets, making beds, moving furniture, hanging drapes, rolling carpet, marking prices by hand on boxes, tying, sewing, sorting and stacking boxes and other articles, and placing or stacking articles in bins require bilateral handling, i.e., "holding, grasping, turning, or otherwise working with the hand or hands." *See supra* n.2. The ALJ's failure to adequately address the apparent and obvious conflict between the *Dictionary* and the VE's testimony constitutes error.

**CONCLUSION**

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this decision.

IT IS SO ORDERED.

DATED September 28, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge